No. 20,217.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD, *Appellee,* v. A. OTT et al., *Appellants.*

### SYLLABUS BY THE COURT.

SALARY—*Register of Deeds—Statute Changing Salary During Term— Construction of Statute.* A register of deeds was allowed as compensation $1100 in fees, and if in any year the fees collected were more than that sum, one-half the excess. In the middle of a year a statute took effect giving him a salary and requiring all fees to be turned into the treasury. At that time he had collected $1002 in fees. *Held,* he was not entitled to all the fees, but should be compensated at the rate of $1100 per year for the time until the statute took effect, plus one-half the excess fees.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Original opinion filed June 10, 1916. Affirmed. Opinion on rehearing (*post,* p. 217) filed December 9, 1916. Reaffirmed.

*F. W. Sturges,* and *Fred W. Sturges, jr.,* both of Concordia, for the appellants.

*S. M. Brewster,* attorney-general, *S. N. Hawkes, John L. Hunt,* assistants attorney-general, and *M. V. B. Van De Mark,* county attorney, for the appellee.

*J. B. Tomlinson, Charles D. Shukers,* both of Independence, *Charles D. Ise,* and *Charles D. Welch,* both of Coffeyville, as *amici curiæ.*

The opinion of the court was delivered by

BURCH, J.: The action was one to recover fees collected by the defendant as register of deeds. The plaintiff recovered and the defendant appeals.

The defendant took office on January 13, 1913, under a statute which fixed his compensation as follows: He was allowed to retain out of fees collected the sum of $1100, and if in any year more than that sum were collected, one-half the excess was to be paid to the county. On July 1, 1913, a statute took effect giving the defendant a salary of $1500 per year and requiring him to turn all fees collected into the general revenue fund of the county. From January 13 to July 1 the defend-

ant collected fees amounting to $1002, which he claims he had the right to keep.

The sum of $1100 allowed the defendant by the old law should be regarded as a yearly compensation to be augmented by one-half the excess over that sum, if any, and he should be compensated at that rate per year for the time he served prior to July 1. Assuming, in order to avoid fractions, that the defendant served six full months before the new law took effect, he could keep one-half of a year's compensation, or $550, out of the fees collected. Deducting this sum from $1002, the amount of fees collected, would leave $452 to be divided between him and the county, or $226 to each. The court applied this rule and no complaint is made of the computation by which the amount of the judgment was obtained.

The judgment of the district court is affirmed.

---

### OPINION ON REHEARING.

The opinion of the court was delivered by

BURCH, J.: A rehearing was granted to allow several county officers other than the defendant, whose interests would be affected by the decision, to be heard. After listening to oral arguments presented at the rehearing and considering new and supplemental briefs which have been filed, the court has concluded to adhere to its former decision.

The statute involved reads as follows:

"The register of deeds of the several counties of the state shall charge and collect the following fees for his service:

[Schedule.]

"*Provided,* That all the fees enumerated in this section shall be due and payable before the register of deeds shall be required to do the work: *Provided further,* That the register of deeds in counties having the following population may retain all fees collected as hereinafter specified:

In counties having a population of

| | |
|---|---|
| more than 5,000 and not more than 10,000, per annum.. | $900 |
| more than 10,000 and not more than 15,000, per annum.. | 1000 |
| more than 15,000 and not more than 20,000, per annum.. | 1100 |
| ........................ more than 55,000, per annum.. | 3000 |

And if in any one year the fees charged shall be more than the sums above specified in their respective counties, the said registers of deeds shall pay to the county treasurer of their respective counties one-half of such excess, when collected, taking duplicate receipts therefor, one of which they shall file with the county clerk, and such money shall become part of the general fund of the county: *Provided,* That in the counties

where the fees charged amount to less than five hundred dollars per annum, the county commissioners shall pay him a sum sufficient to make up said amount." (Gen. Stat. 1909, § 3670.)

It is said that fees are charged, collected and retained for services performed; that the language is, the register "may retain all fees collected"; that one-half the amount above a specified sum is to be paid into the treasury and no more, and that no one but the register has any interest in fees collected until he has received the specified sum. In the present case, the compensation allowed before division of fees with the county takes place would amount to slightly more than three dollars per day if computed on that basis. It is conceivable that the total sum of $1100 might be charged and collected for services rendered in the first month, or week, or even day of a register's term of office. It is argued that if he should then die or resign, he would be entitled to the entire sum, because the required services had been performed, and the contingency on which division with the county depends had not occurred. Decisions of various state and federal courts are cited as sustaining these views.

The court does not read the statute in the way suggested. The register is authorized to charge and collect specified fees for his services, but the statute does not say that he does this as his compensation for those services. Compensation to the register is provided for later. Five cents was not specified as compensation to the register for impressing a filing stamp on a document tendered for filing. The purpose was to make the register's office self-sustaining, and the schedule of fees merely fixes the sum which patrons of the office shall pay in advance for the performance of acts which they occasion. In that portion of the statute which relates to the register's compensation, the provision is that he may retain all fees collected "as hereinafter specified." The specification is, in this instance, "per annum, $1100," that is, $1100 by the year, or annually. Considered as a whole, the statute creates a fund out of which official compensation is payable, by charging patrons of the office small fees. Official compensation is expressly rated by the year. On the basis of previous experience, it was assumed that fees charged would take care of the annual salaries up to the limits stated, except in some of the smaller counties. Should

the fees in those counties not amount to "$500 per annum," a salary of that amount is guaranteed. But if the fees charged "in any one year" should be more than sufficient to pay the per annum compensation, the excess is to be divided, one-half to the county, and one-half to the register for the extra burden of additional work.

The *reductio ad absurdum* employed by the defendant in his argument may be turned against him. Very clearly the purpose was to cover into the treasury one-half of all fees charged by the register of deeds "in any one year" above the stated per annum amount. If the defendant's interpretation of the statute be correct, not only might the county be deprived of this excess, computed at the end of the year, but by death or resignation of the register each one of several incumbents might take out of the fees charged in a single year a sum equal to the total per annum compensation affixed to the office.

The decisions cited in support of the defendant's contention are not conclusive and need not be reviewed. They involved statutes giving officials receiving public moneys percentages of the sums handled as commissions or compensatory fees, with maximum limitations on the amount retainable in any one year. In each instance the commission allowed was in fact compensation to the officer for his service and responsibility in collecting and handling public funds. The leading case, *The United States v. Dickson*, 40 U. S. 141, is typical. The statute involved provided " 'that instead of the compensation now allowed by law to the Receivers of the Public Moneys, for the lands of the United States, they shall receive an annual salary of five hundred dollars each, and a commission of one per cent on the moneys received, as a compensation for clerk-hire, receiving, safe keeping, and transmitting such moneys to the Treasury of the United States: provided always, that the whole amount which any Receiver of Public Moneys shall receive, under the provisions of this act, shall not exceed for any one year, the sum of three thousand dollars.' " (p. 160.) It was held that the commission allowed was the reasonable compensation established by congress for the expenditures and the responsibility incident to receiving, safe keeping and transmitting public moneys, and that any officer who incurred the expense and

responsibility of handling a given sum of money was entitled to the commission upon it. In the opinion it was said:

"The words are, 'and a commission of one per cent on the moneys received, as a compensation for clerk-hire, receiving, safe keeping and transmitting such moneys of the United States; provided always, that the whole amount which any Receiver of Public Moneys shall receive under the provisions of this act, shall not exceed, for any one year, the sum of three thousand dollars.' The commission is on the moneys received by any one officer, not by one or more officers, during any one year of his service; not during any one calendar year, for the services of one or more officers in that year. It is his compensation for clerk-hire, paid by him, and for his responsibilities in receiving, keeping, and transmitting the public moneys; and not for his services and responsibilities in connection with other officers. The commission is a compensation attached to the particular officer for his yearly service, and not to the office itself for a fiscal year. If the intention of the legislature had been what the argument for the United States supposes, the language of the proviso would have been different; it would have been, provided that the United States shall not, in any one calendar year, pay more than one per centum upon all the moneys received during that year; and that the commission for any one year to whomsoever paid, shall not, in the whole, exceed the sum of twenty-five hundred dollars. . . . The enacting clause gives to each Receiver a commission of one per cent upon all the public moneys received by him. This was precisely in conformity to the antecedent laws. The proviso limits that per centage to an amount not exceeding two thousand five hundred dollars; for any one year. Until, then, the percentage of the particular Receiver has reached that amount, in whatever period of the year it may arrive, the proviso, according to its very terms, has no operation: and when that maximum is reached, the percentage ceases, whether any more public moneys are received by that officer or not." (pp. 163, 165.)

The statute of this state contains a limitation quite like that which, as the court suggested, was not contained in the act of congress. If the fees charged in any one year shall be more than the per annum sum specified, the register shall pay into the treasury one-half the excess; that is, there shall not be taken from register's fees charged in any county in any one year, for compensation to the register, more than the sum specified and one-half the excess above that sum.

It is said that the fees collected by the defendant before the act of 1913 took effect where his property, and that his right to them, could not be affected by subsequent legislation. This assertion begs the question to be decided, and is made because the defendant fixes his attention upon the words "may retain

all fees collected" and ignores the next succeeding words, "as hereinafter specified," and the specification following.  If, as the court holds, the defendant was merely entitled to compensation for his services in a per annum amount, to be retained out of a fund consisting of fees charged, he had no property in any specific fee charged.

Finally, it is said that the fee and salary act, of which the quoted section forms a part, is void because it was not regularly passed.  The legislative records show that the bill, which was known as House bill No. 578, passed the house on February 15, 1913, and was messaged to the senate on February 18, 1913.  On March 4 the bill was returned to the house, at its request, for correction.  On March 10 the senate passed the bill with amendments.  On the same day the house refused to concur in the senate amendments, and the differences between the two houses were subsequently adjusted by conference committees.  The legislative record does not anywhere state in terms that the bill was returned to the senate after the house recalled it and before the senate acted on it.  The recorded fact that the senate considered, amended and passed, not something else, but House bill No. 578, is good evidence that the bill was before the senate during those deliberations.  If this were not true, the presumption of regular passage arising from the enrollment, certification, and gubernatorial approval of the bill overcomes the mere silence of the legislative journals.

The former judgment of affirmance is adhered to.